NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ERVIN EDDIE, JR., | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : | Civil Action No. 07-cv-04366 (DMC) |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon appeal by Plaintiff Ervin L. Eddie, Jr. ("Plaintiff") of the Commissioner of Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIBs"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. The record provides substantial evidence supporting the Commissioner's decision that Plaintiff is not disabled. Accordingly, it is the finding of this Court that the Commissioner's decision is **affirmed**.

I.    BACKGROUND

A.    **Procedural Background**

Plaintiff applied for DIBs on August 20, 2002, under Title II of the Social Security Act (the "Act"). The Commissioner denied the initial application on November 6, 2002, and the reconsideration application on January 29, 2003. On March 25, 2003, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Pursuant to Plaintiff's request a hearing was held before

the Honorable Joel Friedman on October 15, 2003.  In his decision dated January 30, 2004, Judge Friedman found that Plaintiff was "not disabled."  Plaintiff requested a review of this decision on March 30, 2004.  The Appeals Council denied Plaintiff's request on July 6, 2007.  On September 1, 2007, Plaintiff commenced this action seeking reversal of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**B.      Factual Background**

Plaintiff, who was born on August 12, 1974, is thirty-four years old. Plaintiff suffers from complications of Acquired Immunodeficiency Syndrome ("AIDS"), Anemia, Herpes Virus, Wasting, Fatigue, diarrhea and muscle pain.  Plaintiff has a college education and a prior work experience from 1997 to 2001 as a corporate brand field trainer.

On August 16, 2001, Plaintiff began treatment with Dr. Eric Macapinlac for AIDS, HIV muscle wasting, and complaints of  "generalized weakness and lethargy."  At this time Plaintiff weighed 155 pounds and had a CD4 count of 10.  Dr. Macapinlac prescribed Trizium.

On February 7, 2002, Dr. Macapinlac reported in his patient progress notes pertaining to Plaintiff that he treated Plaintiff for oral thrush, Advanced AIDS and HIV wasting.  Dr. Macapinlac also reported that Plaintiff weighed 159 pounds.  Later notes dated April 11, 2002, indicate that Plaintiff was prescribed a nutritional supplement and that his weight was 156.5 pounds.  Plaintiff visited Dr. Macapinlac again on the 30th of May where he was treated for blisters and ulcerations on the skin caused by stress.

Treatment notes dated June 6, 2002, indicate that Dr. Macapinlac treated Plaintiff for AIDS, HIV wasting, Herpes Simplex Virus, and a burning sensation in his left leg.  At that same visit Dr. Macapinlac completed a UNICARE Attending Physician Supplement Medical Report noting Plaintiff's chief complaints as being weakness and lethargy.  On October 31, 2003, Dr. Macapinlac

prepared an HIV Medical Assessment form report as an update on Plaintiff's residual functional capacity and impairments.  At that time, Plaintiff's CD4 count was 42.  On March 29, 2004, Plaintiff was evaluated by Dr. Alexander Stoler, an infectious disease specialist at University Hospital in Newark, New Jersey.  At this visit, Plaintiff's weight was the highest recorded, 174.7 pounds.

## II.   STANDARD OF REVIEW

A reviewing court must uphold a Commissioner's decision if the ruling is supported by "substantial evidence."  42 U.S.C. §§405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993).  In the context of social security hearings, the Supreme Court has interpreted the "substantial evidence" requirement to mean that evidence must be "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The Court expounded that evidence must be such that "a reasonable mind might accept [it] as adequate to support a conclusion."  Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).   The Supreme Court also noted that "a reviewing court is not barred from setting aside a[n agency] decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951).  The Third Circuit has determined that some types of evidence do not satisfy the "substantial" standard.  For example:

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v.

Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

Therefore, the Court's inquiry is limited to whether the evidence of record would permit a reasonable mind to support the conclusions reached by the Commissioner.  Where more than one rational interpretation is practicable, the Commissioner's interpretation of the evidence must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. den'd, 459 U.S. 1212 (1983); See also Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).

### A.      The Five Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. §1382.  Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A).  A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy."  42 U.S.C. §1382c(a)(3)(B).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation.  20 C.F.R. §416.920.  The claimant bears the burden of establishing the first two requirements, namely that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with a "severe impairment" or "combination of impairments."  20 C.F.R. §404.1520(a)-(c). If a claimant fails  to demonstrate either of these two requirements, DIBs are denied and the inquiry

-4-

ends.  Bowen v. Yuckert, 482 U.S. 137, 146-147 n.5 (1987).

If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1.  If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs.  Id.  If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment.  20 C.F.R. §416.920(e).  If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and  is not entitled to DIBs.  Id.  If the claimant is unable to return to his previous employment, the analysis proceeds to step five.  At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience.  20 C.F.R. §416.920(g).  If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs.  Yuckert, 482 U.S. at 146-47 n.5.

### B.      The Record Must Contain Objective Medical Evidence

Under the Act, disability must be established by objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A).  Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires:

[M]edical signs and findings, established by medically acceptable clinical or

> laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . .. would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A).  Credibility is a significant factor.  When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## III.   DISCUSSION

### A.   The ALJ's Credibility Determination Regarding Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ committed a reversible error in finding that his subjective complaints were not credible under 20 C.F.R. §404.1529.  It is the responsibility of the ALJ to make a determination as to Plaintiff's credibility. When a medically determinable impairment is alleged, objective medical evidence must be considered in determining whether disability exists. 20 C.F.R. §404.1529(c)(2).  If a claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, an ALJ must consider the following factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's

pain or other symptoms; (3) factors that precipitate and aggravate the symptoms;(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §404.1529(c)(3).

The ALJ weighed both the objective medical evidence and the subjective complaints of Plaintiff and determined that despite his impairment, Plaintiff could still perform gainful activity. The ALJ concluded that Plaintiff was "not fully credible."   This was partly based upon the fact that Plaintiff allegedly suffered from HIV wasting but his weight during the hearing was the heaviest he had been.  The ALJ found that Plaintiff's own description of his daily activities was consistent with the ability to perform sedentary work.   Plaintiff shopped for groceries, went to the bank and performed other ordinary errands.  The ALJ determined that medical evidence did indicate fatigue, however, not to the extent that would render Plaintiff unable to work.  The ALJ properly compared objective evidence to Plaintiff's subjective complaints in accordance with 20 C.F.R. §404.1529. Therefore, the ALJ's assessment of the credibility of Plaintiff's subjective complaints is affirmed.

### B. The Weight Given to Dr. Macapinlac's Opinion

The ALJ held that Plaintiff is capable of performing sedentary work after a review of the medical records and physician opinions.  The ALJ's determination is based in part on Plaintiff's testimony regarding his day to day activities and in part because the ALJ found Plaintiff's treating physician's testimony to be non-credible.

An opinion from a treating source should be given significantly more weight than opinions

-7-

from other sources as long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2).   If the adjudicator concludes that the opinion from the treating source is not controlling, the adjudicator must consider the following factors: (1) the length of the treatment relationship and the frequency of   examinations; (2) the nature and extent of the treatment relationship; (3) supporting evidence; (4) consistency with the record; (5) the specialization of the physician; and (6)  any other relevant factors. 20 C.F.R. §404.1527(d)(2).

The ALJ held that the opinion of Dr. Macapinlac "deserves lesser weight under 20 C.F.R. §404.1527" due to inconsistencies between his reported opinion and the notes from his treatment of Plaintiff.  An important justification for not giving deference to Dr. Macapinlac's opinion was Dr. Macapinlac's diagnosis of HIV wasting syndrome.  When Dr. Macapinlac diagnosed Plaintiff with HIV wasting syndrome Plaintiff weighed 155 pounds.  From that point up to the date of trial, Plaintiff's weight increased to 165 pounds.  At no point was Plaintiff's weight recorded near the 120 pound mark that Plaintiff had claimed.  Moreover, the treatment notes failed to document or reference any chronic diarrhea, vomiting, or manifestations of neuropathy; symptoms usually associated with HIV wasting syndrome.  Despite Dr. Macapinlac's diagnosis of oral thrush, Plaintiff did not suffer from the "opportunistic infections" usually present in HIV wasting syndrome cases. To qualify as an opportunistic infection, candiasis must be "at a site other than the skin, urinary tract, intestinal tract, or oral or vulvovaginal mucous membranes" or must involve the esophagus, trachea, bronchi, or lungs.  Here, Plaintiff's symptoms did not include "opportunistic infections."  The discrepancies in Dr. Macapinlac's medical opinion and his medical records provide amply support for the ALJ's determination.  These discrepancies certainly provide a reasonable basis for affording

Dr. Macapinlac's opinion less deference than traditional given to treating physicians.  In addition, Plaintiff was assessed by Dr. J. Drice, the state agency medical consultant.  Dr. Drice opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand and/or walk for about six hours in an eight-hour workday.  Dr. Drice also concluded that there were no opportunistic infections and that the objective evidence did not support Dr. Macapinlac's diagnosis of HIV wasting syndrome.  The ALJ properly weighed the opinion of the state agency medical consultant against the opinion of the treating physician and the objective medical evidence.  Therefore, the ALJ's conclusion that Plaintiff is not entitled to DIBs is affirmed.

### C.    The Five Step Analysis for Determining Disability

#### 1.     Step One: Substantial Gainful Work Activity

Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. §404.1523(a).  Here the ALJ found that Plaintiff had not engaged in substantial work activity during the relevant time period.  This finding is not disputed by the parties.  Accordingly, the ALJ's finding regarding step one is upheld.

#### 2.    Step Two: Severity of Impairment

An impairment is "not severe" if it "does not significantly limit [the claimant's] physical or mental ability to do basic activities." 20 C.F.R. §404.1521(a).  Examples of basic activities examined when assessing a claim for DIBs are the claimant's ability to walk, stand, sit, lift, push, pull, reach, carry, or handle  items.  20 C.F.R. §404.1521(b)(1).  Basic work activities also include mental functions like the ability to understand, carry out, and remember simple instructions.  20 C.F.R. §404.1521(b)(3).  Also considered are the claimant's use of judgment, the ability to respond appropriately and the ability to deal with changes in a work setting. 20 C.F.R. §404.1521(b)(4)-(6).

When analyzing a claimant's alleged impairment(s) the Commissioner dictates that:

> Great care should be exercised in applying the not severe impairment
> concept.  If an adjudicator is unable to determine clearly the effect of
> an impairment or combination of impairments on the individual's
> ability to do basic work activities, the sequential evaluation process
> should not end with the not severe evaluation step. Rather it should
> be continued.

Social Security Ruling 85-28 at 394.

A claim will be denied at this stage of the analysis if "medical evidence establishes only a slight abnormality...which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." S.S.R. 85-28.  The Third Circuit explained the "de minimis" nature of the second step of the disability evaluation process by stating that "[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  Newell v. Commissioner of Social Security, 347 F.3d 541, 546-547 (3d Cir. 2003); see McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004).  In Newell, the Third Circuit held that "[r]easonable doubts on severity are to be resolved in favor of the claimant." Id. at 546-547.

In the instant case, the ALJ determined that Plaintiff's impairment is not sever .  The record supports the ALJ's determination.  Plaintiff can regularly lift ten pounds and can stand and/or walk for six hours in an eight-hour workday.  Plaintiff testified that he routinely performs errands such as shopping and banking.  Therefore, the ALJ's determination regarding step two is affirmed.

3.      Step Three: Listing of Impairments

If the claimant's impairment(s) meets or medically equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404, the claimant is considered disabled without further inquiry.  20

-10-

C.F.R. §404.1520(d).  The ALJ reviewed the medical opinion of Dr. Macapinlac as well as the objective medical record and determined that Plaintiff's impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404 Appendix 1, Subpart P.  The relevant evidence of record supports the ALJ's determination and it is therefore affirmed.

4.      Step Four: Residual Functional Capacity to Perform Past Relevant Work

The fourth step concerns whether the claimant has sufficient residual functional capacity to resume his past relevant work.  20 C.F.R. §404.1520(e).  If sufficient residual capacity exists, he is not disabled within the meaning of the Act. Id.  The ALJ determined that Plaintiff could not resume his previous work.  This determination is not challenged and is therefore, affirmed.

5.      Step Five: Ability to Work

At step 5, once the claimant meets the initial burden of establishing that he cannot perform his or her past relevant work, the burden shifts to the Commissioner to show what other employment the claimant can do based on the claimant's RFC, age, education and work experience. 20 C.F.R. §404.1520(a)(4)(v).

Dr. Macapinlac opined that Plaintiff could not complete a normal workday without interruptions because of psychological symptoms.  According to Dr. Macapinlac, Plaintiff was also unable to meet competitive standards for dealing with the stress of skilled and semiskilled work.  Dr. Macapinlac's notes make no reference to mental limitations and Dr. Macapinlac is not a psychologist or psychiatrist.

The ALJ rejected Dr. Macapinlac's opinion and concluded that while Plaintiff cannot resume his past relevant work, he does have a sedentary level RFC.  The objective evidence contained within the record does not support Dr. Macapinlac's findings.  The ALJ properly found that Plaintiff

-11-

retained the RFC to perform sedentary work.  The ALJ, in consideration of Plaintiff's RFC together with vocational factors of age, education, and work experience, concluded that Plaintiff can perform other work which exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g) and 404.1560(c).  The ALJ correctly applied Rule 201.28 of the Medical-Vocational Guideline and found that the Plaintiff was not disabled.  The ALJ's determination is affirmed.

**IV.**	**CONCLUSION**

For the reasons stated, the Court finds that substantial evidence supports the ALJ's factual findings and thus, the Commissioner's final decision denying Plaintiff DIBs is **affirmed.**

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:	December   30  , 2008
Orig.:	Clerk
cc:	Counsel of Record
	The Honorable Mark Falk, U.S.M.J.
	File

-12-